UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER TOWERS and CATHERINE aka KATE TOWERS,<br><br>Plaintiffs,<br><br>v.<br><br>POST PROPERTIES, et al.,<br><br>Defendants. | No. 2:24-cv-2965 DC AC PS<br><br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiffs are proceeding in this matter pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). Defendants specially appeared and moved to dismiss on March 7, 2025. ECF No. 27. Plaintiffs filed a motion for sanctions that substantively responds to the motion to dismiss. ECF No. 33. For the reasons that follow, the undersigned recommends that defendants' motion be GRANTED and that this case be DISMISSED in its entirety. The court further ORDERS that plaintiffs' motion for sanctions (ECF No. 33) is DENIED.

**I. Background**

A. <u>The Complaint</u>

The operative Second Amended Complaint ("SAC") was filed on February 26, 2025 by plaintiffs in pro se, following the withdrawal of their counsel. ECF No. 23. According to the

1  SAC, plaintiff Roger Towers ("Roger") is a real estate broker who entered into an agreement with
2  Post Properties, LLC on May 1, 2000, for the purpose of obtaining tenants for a business park
3  known as PSI Corporate Campus. ECF No. 23 at 5. The agreement is attached to the SAC as
4  Exhibit A. Id. at 24-28. Pursuant to the agreement, Roger was to be paid a commission annually
5  for month-to-month tenants, and for long term tenant extensions he was to be paid at the time of
6  such extension. Id. at 27. There was no end date on the agreement regarding commissions. Id. at
7  24-28.
8      On July 31, 2001, Peter Post, on behalf of Post Properties, advised Roger by letter that
9  they would not extend the agreement for Roger to be their broker. Id. at 5. On September 6,
10 2001, Peter Post sent an email to the employees of Post Properties and certain PSI employees
11 stating that they will not sign any long-term agreement with Roger Towers to be their exclusive
12 agent. Id. Binding arbitration ensued in 2005, and findings from that arbitration, dated December
13 15, 2005, are attached to the SAC as Exhibit B. Id. at 31-37. In that decision, the question before
14 the arbitrator was "whether the plain language of the Schedule of Commission and Fees attached
15 to the Exclusive Authorization to Sell, Lease, Exchange or Option . . . was modified or
16 superseded by an executed oral agreement or by the deletion of paragraph 15 in" two lease
17 expansions issued to Tenet Health System Hospitals, Inc. and Fresno Institute of Technology
18 ("IOT"). Id. at 31, 32. The arbitrator found that Post and Towers did not orally modify the
19 contract: although Post called Towers and stated it would not pay additional commissions for
20 extensions of leases and for the taking of additional space by existing tenants under the lases
21 procured by Towers, Towers did not agree to that arrangement. Id. at 32. The arbitrator further
22 found that the deletion of a paragraph in the leases did not alter the schedule of fees or
23 commissions. Id. at 33-34. Accordingly, the arbitrator concluded that Towers was owed
24 commissions on the leases at issue. Id.
25     In June or July of 2008, Roger exchanged communications with Post's attorney Michael
26 Rein concerning a lease originally executed by IOT to clarify the commissions owed to Towers.
27 Id. at 7. At the time, the rent for IOT exceeded $50,000. Post paid Towers for this lease
28 extension, though the payment was late and issued only after Roger's demand. Id. On July 30

and August 4, 2013, Roger made several attempts to contact Post regarding the IOT lease, which was set to expire on August 31, 2013. Ultimately Roger and Mr. Rein exchanged emails. Id. The lease was extended to August 31, 2016. Id.

In November of 2016, Roger sent Lynaya Post an email requesting information on the IOT lease. She forwarded the email to attorney Rein, and Roger and Rein exchanged emails in November and December of 2016. Id. at 8. Rein stated that another tenant was renewing its lease for three years, until August 31, 2019, and that Roger's calculated commission amounted to $59,005.52. Id. Roger agreed that the calculation was correct but stated that he was also entitled to interest calculated at 10% for delay in payment between the execution of the lease and payment of the commission. Id. The parties disputed whether there was any interest due. Id. Plaintiffs allege that with the aid of Mr. Rein, Post is underpaying commissions. Id.

As of September 2016, Roger developed health problems and was engaged in another lawsuit, and he "lost track of the leasing situation at Post Properties." Post never made another commission payment. Id. at 10. Plaintiffs believe there are still tenants on the campus on which Post owes commissions, and that Post has been concealing at least one tenant to avoid commissions. Id. Plaintiff alleges that attorney Michael Rein has been "used as a willing tool by and through which Post Properties LLC, Peter Post, and Lynaya Post disseminate misinformation to Roger and intend to deceive him by suggestions of fact not true, half-truths, and outright lies." Id.

The SAC asserts the following causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) fraud at inception of contract; (4) conspiracy to commit fraud; (5) aiding and abetting fraud; (6) intentional infliction of emotional distress; (7) loss of consortium; (8) violation of RICO, [18 U.S.C. §] 1692(a); (9) violation of RICO, [18 U.S.C. §] 1962(b); (10) violation of RICO, [18 U.S.C. §] 1962(c); and (11) violation of RICO, [18 U.S.C. §] 1962(d). Id. at 15-20.

   B.  Motion to Dismiss

All defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendants also allege they have not been properly served. Because the court finds the arguments brought under Rule 12(b)(6) to be dispositive, and the

additional arguments for dismissal too cursory to support relief, only the Rule 12(b)(6) issues are addressed.

## II. Analysis

### A. Legal Standards Governing Motions to Dismiss Under Rule 12(b)(6)

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State

Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. Failure to State a Claim

This case must be dismissed in its entirety because plaintiffs fail to state a claim upon which relief can be granted. The complaint is premised on the validity of the underlying agreement, which grants Roger Towers a commission in perpetuity on the leases of any tenants procured by Towers. Defendants assert that the entire complaint fails because the underlying agreement is void and unenforceable. The court agrees.

1. The Underlying Commissions Agreement is Void and Unenforceable, Defeating Plaintiffs' Breach of Contract Claim

Assuming that Mr. Towers was acting as a licensed real estate broker,[1] his conduct and the

---

[1] The SAC does not include licensing information for Roger Towers, though it does refer to him as a real estate broker. ECF No. 23 at 5. If Mr. Towers was acting as anything other than a *duly licensed* real estate broker, he would be barred from filing suit regarding the commission agreement. California Business and Professions Code § 10136 states that "No person engaged in the business or acting in the capacity of a real estate broker or a real estate salesperson within this state shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he or she was a duly licensed real estate broker or real estate salesperson at the time the alleged cause of action arose." Plaintiffs' motion for sanctions, unlike the SAC, expressly asserts that Mr. Towers was acting as a licensed real estate broker. ECF No. 33 at 13. The undersigned does not recommend dismissal for failure to plead licensure status, as such a defect is theoretically curable by amendment while other defects discussed above are not.

5

1  broker agreement were, at all relevant times, covered by the California Business and Professions

2  Code §10176(f). This provision reads as follows:

> The [Real Estate] commissioner may, upon his or her own motion, and shall, upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this state, and he or she may temporarily suspend or permanently revoke a real estate license at any time where the licensee, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following: . . . (f) Claiming, demanding, or receiving a fee, compensation, or commission under any exclusive agreement authorizing a licensee to perform any acts set forth in Section 10131 for compensation or commission where the agreement does not contain a definite, specified date of final and complete termination.

Cal. Bus. & Prof. Code § 10176. California courts have held that where the Business and Professions Code "imposes a penalty for the doing of an act, even though it does not expressly prohibit it or make the act void, a contract founded upon such act is void." Dale v. Palmer, 106 Cal. App. 2d 663, 667 (1951) (finding in considering an agreement where a termination date could only be computed by reference to the happening of a future event, that the agreement violated).

Here, it is undisputed that the commissions agreement does not contain a definite termination date, and it therefore unquestionably violates California Business and Professions Code §10176(f). Under California law, the underlying agreement is therefore void. Id.; see also Allcapcorp Ltd v. CHC Consulting LLC, No. SACV-19-00206 JVS (JDE), 2020 WL 3108708, at *9 (2020 U.S. Dist. LEXIS 104207) (C.D. Cal. Apr. 8, 2020), aff'd sub nom., Allcapcorp Ltd. v. CHC Consulting LLC, No. 20-55457, 2021 WL 3667230 (9th Cir. Aug. 18, 2021). "To be entitled to damages for breach of contract, a plaintiff must plead and prove the following elements: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff." Reinhardt v. Gemini Motor Transp., 879 F. Supp. 2d 1138, 1143 (E.D. Cal. 2012). Because plaintiffs cannot show the existence of a valid contract, they cannot state a contract claim. Accordingly, plaintiffs' claim for breach of contract (First Claim) must be dismissed.

////

2. Plaintiffs Cannot State a Breach of Fiduciary Duty Claim

Plaintiffs' SAC does not demonstrate the existence of a fiduciary relationship between the parties (except, perhaps, a duty owed by Roger to Post), and accordingly plaintiffs cannot state any claim based on fiduciary duty. "[A] fiduciary relationship is a recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client." Richelle L. v. Roman Catholic Archbishop, 106 Cal.App.4th 257, 271 (2003). A fiduciary relationship is a particular legal status in which the fiduciary is required to manage the subject matter of the fiduciary relationship with due care, must account to the beneficiary, and must keep the beneficiary fully informed as to all matters pertinent to the beneficiary's interest. Oakland Raiders v. National Football League, 131 Cal. App. 4th 621, 631 (2005). Fiduciary duties arise only through agreement or as a matter of law. Id. There is a fiduciary relationship as a matter of law between a real estate agent or broker and his or her client, but the *broker* owes the fiduciary duty to the client, not the other way around. Smith v. Zak, 20 Cal. App. 3d 785, 792 (1971) ("The obligations *imposed on a real estate agent* are the same as those imposed on a trustee . . . Thus, all transactions between a broker and his client by which the broker obtains any advantage are presumed to be without sufficient consideration." (emphasis added)).

It is well established in California law that a mere contract or a debt does not constitute a trust or create a fiduciary relationship. Wolf v. Superior Court, 107 Cal. App. 4th 25, 33-34 (2003). It is plain from the allegations in the SAC that defendants were not acting as fiduciaries for the plaintiffs. Even taking as true the allegation that defendants owed a commission to plaintiffs pursuant to a contract, that fact does not give rise to a possible fiduciary duty owed by defendants to the plaintiffs. Accordingly, claims based on fiduciary duty fail as a matter of law.

3. Plaintiffs' Tort Claims are Barred by the Economic Loss Doctrine

Plaintiffs assert two tort claims (intentional infliction of emotional distress and loss of consortium), both of which arise from defendants' alleged breach of the agreement to pay commissions. California's economic loss rule is intended to keep the law of contract and the law of tort from dissolving into one another. Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc., 629 F. Supp. 2d 1135, 1145 (E.D. Cal. 2009). The doctrine bars tort claims based

on the same facts and damages as a breach of contract claim, absent breach of an independent legal duty. Id. ("In other words, 'conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law.'" (citations omitted)). Here plaintiffs have not identified any legal duty owed to them by defendants that would be legally independent of the asserted contractual obligation and cognizable in the torts context. On the facts alleged in the SAC, the court finds no basis for any such duty. Accordingly, these claims cannot survive.

### 4. Plaintiff Cannot State a Fraud Based Claim

Plaintiffs bring multiple claims based in fraud, including a claim for fraud at inception of contract (Third Claim), conspiracy to commit fraud (Fourth Claim), and aiding and abetting fraud (Fifth Claim). "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996). Fraud claims are subject to a heightened pleading standard and must be pled with specificity. Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal. App. 4th 221, 234 (2014).

The allegations in the SAC undercut any potential fraud claim. Plaintiffs admit that Post actually paid commissions under the agreement for at least sixteen years, from 2000 to 2016. ECF No. 23 at 42-43. Though the agreement was challenged once before and the parties engaged in arbitration in 2005, defendants' initial payments on the agreement and ongoing payments following arbitration for 16 years bely any "intent to defraud" the plaintiffs. Further, the alleged fraud is predicated on an agreement that the court finds was void at its inception under California law. For these reasons, plaintiffs' fraud claims necessarily fail.

### 5. Plaintiffs Cannot State a Civil RICO Claim

Plaintiffs bring five civil RICO claims (Eighth, Ninth, Tenth, and Eleventh Claims). ECF No. 32 at 19-20. The elements of a civil RICO claim are that

> a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt. In addition, the

8

conduct must be (5) the proximate cause of harm to the victim. To show the existence of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish this purpose.

Eclectic Properties E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (internal citations omitted).

The allegations of the SAC, taken as true, do not support any civil RICO claim. First, there are no allegations related to interstate commerce. Second, plaintiffs' allegations that defendants refused to honor a single contract cannot be construed as allegations that defendants collectively engaged in any kind of enterprise with a common purpose, structure or organization, let alone with the longevity necessary to accomplish their joint purpose. The facts underlying the parties' dispute over commissions owed simply do not amount to racketeering. The civil RICO claims fail as a matter of law.

### III.    Leave to Amend Is Not Appropriate

Plaintiffs' complaint is fatally flawed because it does not present any viable cause of action. The agreement underlying all of the allegations of legal wrongdoing is void under California law. The allegations do not support any legal claim asserted. No amendment can remedy these defects. Further, plaintiffs have already been given an opportunity to amend. Though pro se plaintiffs are generally entitled to an opportunity to correct defects in a complaint by amendment, that step is not appropriate in cases in which the defects cannot be cured. Noll, 809 F.2d at 1448.

### IV. Plaintiffs' Motion for Sanctions

Plaintiff's brief that is responsive to the motion to dismiss is also styled as a motion for sanctions. ECF No. 33. Plaintiffs assert that severe sanctions are warranted due to defendants' misrepresentations to the court. The undersigned has reviewed the SAC, the motion to dismiss, and all other briefing on the docket and finds no basis for sanctions. This motion is DENIED.

### V. Pro Se Plaintiff's Summary

Your motion for sanctions is denied because the court does not find that defendants engaged in any sanctionable behavior.

9

Further, the court is recommending that defendants' motion to dismiss be granted because California law prohibits real estate contracts in which the broker gets commissions forever, with no end date. The magistrate judge found that there is no basis in law for your claims against the defendants. You have 21 days to object to the findings and recommendations. The District Judge will make the final decision.

### VI. Conclusion

Plaintiffs' motion for sanctions (ECF No. 33) is DENIED.

Further, the undersigned RECOMMENDS that defendants' motion to dismiss (ECF No. 27) be GRANTED and that this case be dismissed because it fails to state a claim upon which relief can be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. <u>Id.</u>; <u>see also</u> Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: May 21, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE